UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CETERA ADVISOR NETWORKS LLC,<br><br>              Plaintiff,<br><br>   v.<br><br>PROTECTIVE PROPERTY AND CASUALTY INS. CO., CAL CAPITAL LTD., and GERALD B. GLAZER,<br><br>              Defendants.<br>AND RELATED COUNTER AND CROSSCLAIMS. | Case No. 2:19-cv-00299-JAM-JDP<br><br>**ORDER DENYING CAL CAPITAL LTD.'S MOTION TO DISMISS** |

More than two years and several motions into this lawsuit, the Court presumes the parties are familiar with the facts and procedural history. As a result, neither will be reduced into writing again here. Cal Capital Limited ("Cal Capital") moves to dismiss the First and Second Counts in Protective Property & Casualty Insurance Company's ("Protective") cross-claims against it. See Mot. to Dismiss ("Mot."), ECF No. 90. Protective opposes the motion. See Opp'n, ECF No. 94. Cal Capital filed a reply. See Reply, ECF No. 97. For the reasons discussed below, the Court DENIES Cal Capital's motion.[1]

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 9, 2021.

1

I.   OPINION

A.   Request for Judicial Notice

Cal Capital requests that the Court take judicial notice of Chesterfield's Assignments of Rights to Reimbursement for Service Contracts Issued Through Sacramento Infiniti ("reimbursement agreement"), dated October 16, 2020, as it is incorporated by reference in Protective's First Amended Crossclaim ("FAC") against Cal Capital. See Req. for Judicial Notice ("RJN"), ECF No. 90-2; see also Cotto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010) (a court may consider materials incorporated into the complaint when deciding a motion to dismiss). Protective does not oppose this request. Accordingly, Cal Capital's request for judicial notice is GRANTED.

B.   Analysis

Protective's FAC alleges that Cal Capital breached the Agreement to Assign Rights ("assignment agreement") and the Trust Agreement ("trust agreement") by failing to pay its vehicle service contracts ("VSC"). See FAC ¶ 28, ECF No. 89. Protective further alleges that Cal Capital breached its contractual and legal obligations by interfering with Protective's reimbursements and seeking to unduly influence the consumer claims process in order to profit financially. Id. ¶¶ 28, 30. Protective also requests that the Court issue a declaration that any remaining funds in the trust account be transferred to a financial institution to be held for future distribution. Id. ¶ 36.

To state a viable claim for breach of contract under California law, a party must allege: (1) the existence of a valid contract; (2) plaintiff's performance or excused nonperformance of

2

the contract; (3) defendant's breach; and (4) damage to plaintiff caused by defendant's breach. Sacramento Reg'l Pub. Safety Comm'ns Ctr. v. Tyler Techs., Inc., WL 1255252, at *1 (E.D. Cal. 2019). Cal Capital argues that Protective's breach of contract and declaratory relief claims fail because: (1) Protective did not identify a provision breached by Cal Capital; (2) Protective fails to allege a valid assignment; (3) Protective admits that another party caused its damages; and (4) a trustee cannot sue its beneficiary as a matter of law. See generally Mot.

### 1. Breach of Contract

#### a. Provisions Breached

Pursuant to California law, a breach of contract claim must "allege the specific provisions in the contract creating the obligation the defendant is said to have breached." Young v. Facebook, Inc., 790 F.Supp.2d 1110, 1117 (N.D. Cal. 2011). Cal Capital argues that Protective failed to specify the breached provisions. See Mot. at 6-7. Protective contends that several portions of the FAC detail Cal Capital's obligations under the assignment and trust agreements and specify how Cal. Capital disregarded them. See Opp'n at 6-9 (citing FAC ¶¶ 7, 8, 16, 15, 28). Cal Capital argues that, "none of these [portions of the FAC] specify the provisions in the Contracts that are purportedly breached." Reply at 2. Instead, they mainly consist of legal conclusions. Id.

The FAC states that the assignment agreement obligates Cal Capital to reimburse Chesterfield International Reinsurance Limited ("Chesterfield"), one of Protective's affiliates, for amounts that Protective is "legally obligated to pay in accordance

3

with the terms of the [VSC's] . . . ." FAC ¶ 7 (citing Assignment Agreement § 6, Ex. A to FAC, ECF No. 89). And that, pursuant to the trust agreement, if Cal Capital is "unable to pay any of the above charges, it is the sole responsibility of [Cal Capital] to satisfy those demands." FAC ¶ 16, n.7 (citing Trust Agreement Conditions, Ex. B to FAC, ECF No. 89). The "above charges" include "net amounts due under the assignment agreement." Id. The FAC goes on to allege that, beginning in August 2017, Cal Capital instructed Cetera not to allow withdrawals by Protective from the account. FAC ¶ 15. And that, by November 2017, Cetera was complying with Cal Capital's instructions and refusing Protective's withdrawal requests. FAC ¶¶ 15, 28. In failing to pay its VSC-related liabilities and interfering with, and preventing, Protective's reimbursements from the trust account for VSC consumer claims and related liabilities, Protective alleges that "Cal Capital breached the [agreements]." FAC ¶ 28.

The above portions of the FAC describe Cal Capital's obligations under specific provisions of the assignment and trust agreements, respectively. Pursuant to those provisions, Cal Capital was responsible for covering the amounts Protective was legally obligated to pay per the various VSCs. The FAC then sets forth the factual allegations Protective believes constitute a breach of those obligations. By instructing Cetera to stop reimbursing Protective, Cal Capital, in effect, failed to fulfill its obligations regarding VSC-related payments. These portions of the FAC are not mere legal conclusions. Thus, the Court finds that Protective has set forth the provisions breached, and how they were breached, with sufficient specificity.

4

### b. Assignment

Cal Capital argues that Protective lacks the right to assert its breach of contract claim against it because reimbursement rights were not validly assigned from Chesterfield to Protective. Mot. at 7-8. Cal Capital relies on the language of § 10.8 of the assignment agreement to make this argument. Id. Section 10.8 states: "This agreement may only be modified in writing in accordance with the mutual and express consent of all parties hereto." Assignment Agreement § 10.8. This argument fails. An assignment of rights under a contract is not a modification of the contract. See In re Trejos, 374 B.R. 210, 216 (B.A.P. 9th Cir. 2007) (finding a party's assignment of its financial interest in a contract was not a modification of the contract). Indeed, California "has a strong policy in favor of the free transferability of all types of property, including rights under contracts." Land Lot 1, LLC v. City of Bakersfield, 2012 WL 2357405, at *3 (Cal. Ct. App. 2012) (citations omitted).

The assignment did not modify a party's obligations under the contract. Thus, the assignment agreement did not require Cal Capital's consent for Chesterfield to transfer its right to reimbursement to Protective. The right to reimbursement was properly transferred to Protective.

### c. Causation

Cal Capital argues that Protective's breach of contract claim fails because "Cetera—and not Cal Capital—refused to comply with Protective's requests" for reimbursement. Mot. at 8. As a result, there is no proximate cause. Id. "The test for causation in a breach of contract cause of action is whether the breach was

a substantial factor in causing the damages." BladeRoom Grp. Ltd. v. Emerson Elec. Co., 331 F.Supp.3d 977, 987 (N.D. Cal. 2018) (internal quotation marks and citation omitted). "The substantial factor standard generally produces the same result as [] the but for rule of causation, but it also reaches beyond it to address other situations, such as those involving independent or concurrent causes in fact." ChromaDex, Inc. v. Elysium Health, Inc. 2019 WL 7166056, at *1 (C.D. Cal. 2019) (internal quotation marks and citation omitted).

According to the FAC, Cal Capital breached the assignment and trust agreements by failing to pay its VSC-related liabilities and preventing Cetera from complying with Protective's withdrawal requests. See FAC ¶¶ 15, 28 ("Glazer, acting on behalf of Cal Capital, directed Cetera's Robert Taylor and his staff to refuse Protective's withdrawal requests, and Cetera complied with Glazer's instructions rather than Protective's."). The FAC goes on to allege that, "[a]s a direct and proximate result of Cal Capital's breaches, Protective has suffered damages in the minimum amount of $475,114.96." FAC ¶ 28. These factual allegations support Protective's contention that Cal Capital's alleged breach amounts to a substantial factor in causing the damages. The Court finds that Protective has adequately alleged proximate cause in its breach of contract claim.

### d. Ripeness

Cal Capital argues that Protective's breach of contract claim is unripe and will only become ripe after Protective's arbitration with Cetera has concluded. Mot. at 9. However, Cal Capital fails to support this argument with any relevant law. Ripeness doctrine

6

requires "an immediate and certain injury to a party." Clinton v. Acequia, Inc., 94 F.3d 568, 572 (9th Cir. 1996). Here, Protective seeks damages for an alleged breach of contract that has already occurred. See generally FAC. Protective alleges that the breach resulted in it incurring $475,114.96 in damages. FAC ¶ 28. Thus, Protective's claims are ripe for adjudication.

### e. Damages

Cal Capital's final argument specific to the breach of contract claim is that Protective failed to plead damages because Chesterfield assigned its rights to reimbursement under the reimbursement agreement on October 16, 2020, after the reimbursement claims were filed. Mot. at 9-10 (citing FAC ¶ 16). This argument is without merit. In the reimbursement agreement, Chesterfield assigned "all of its right, title, and interest to receive reimbursements under the Cal Capital Agreement to [Protective]." See Reimbursement Agreement ¶ 1, Ex. C to RJN, ECF No. 90-2. For the reasons explained above, this assignment of the right to reimbursement was also valid under California law. And, in transferring all of its right to receive reimbursement, Chesterfield transferred its right to outstanding and future reimbursements over to Protective. This includes outstanding reimbursement claims that predated the October 16, 2020 reimbursement agreement.

As such, Protective's damages are not improperly pled. The FAC sufficiently pleads each element of a breach of contract claim and Cal Capital's motion to dismiss Count One is DENIED.

### 2. Declaratory Relief Claim

A claim for declaratory relief must present an "actual

controversy" that is "definite and concrete, touching the legal relations of parties having adverse legal interests . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." In re Adobe Sys., Inc. Privacy Litig., 66 F.Supp.3d 1197, 1219-20 (N.D. Cal. 2014) (quoting 28 U.S.C. § 2201(a)).  Cal Capital argues that Protective's declaratory relief claim is invalid because it seeks to adjudicate past liability incurred by Cal Capital and is duplicative of its breach of contract claim.

This dispute centers on the amount Protective is allegedly entitled to recover under its agreements with Cal Capital. Protective argues that it is entitled to an amount exceeding the $473,643.62 Cetera interpled into the Court's registry. See FAC ¶ 19. Cal Capital disagrees. See Mot. at 9–10. If the Court ultimately concludes that Protective is entitled to less that the amount in the Court's registry, there will be a controversy over where the remaining funds should be transferred. With this eventuality in mind, Protective requests that the Court declare that any remaining trust account proceeds be transferred to SunTrust Bank and held for future disbursement. FAC ¶ 38. The relief sought is distinct from Protective's breach of contract claim and constitutes a viable claim for declaratory relief. Accordingly, Cal Capital's motion to dismiss Count Two is DENIED.

       3.   <u>Trustee Suit</u>

In a final effort to succeed on this motion, Cal Capital argues that Protective is its fiduciary because it is a trustee, and, because "a fiduciary cannot sue its beneficiary," the FAC is entirely "void as a matter of law." Mot. at 11. The authorities

8

cited by Cal Capital do not support this conclusion. For instance, in <u>Donahue v. Donahue</u>, 182 Cal. App. 4th 259, 268 (Cal. Dist. Ct. App. 2010), a trustee sued his beneficiary for fees and expenses. There, the court did not conclude that the trustee, as such, could not sue as a matter of law.

Moreover, as Protective points out, this case involves a reinsurance relationship. <u>See</u> Opp'n at 15. Under the assignment agreement, Cal Capital, a reinsurer, was to reimburse Protective, the reinsured, for all claims reasonably paid to consumers under the VSCs. And, within a reinsurance relationship, "neither party owes the other a fiduciary duty." <u>See</u> <u>Cal. Joint Powers Ins. Auth. v. Munich Reinsurance Am., Inc.</u>, WL 1885754, at *4 (C.D. Cal. 2008) ("[T]he relevant policy reasons inherent in a finding of a fiduciary relationship, e.g., one party's dominance, do not extend to the reinsurance context."). Therefore, Cal Capital's role as reinsurer does not prevent Protective from filing suit against it.

## II. ORDER

For the reasons discussed above, the Court DENIES Cal Capital's Motion to Dismiss.

IT IS SO ORDERED.

Dated: April 12, 2021

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE